IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-00992-MEH-BNB

JOSEPH and DIANE SILVA,

    Plaintiffs,

vs.

TT OF COLORADO SPRINGS, INC.,
d/b/a SOUTH COLORADO SPRINGS NISSAN,

    Defendant.

_____

**ORDER ON DEFENDANT'S MOTION FOR A STAY AND TO COMPEL ARBITRATION, AND IN THE ALTERNATIVE, MOTION TO DISMISS PLAINTIFF DIANE SILVA'S CLAIM**
_____

Defendant has filed a motion to stay this case and compel arbitration [Docket #5]. The Motion is briefed, and oral argument would not materially assist the Court in its adjudication. For the reasons set forth below, the Court will **grant** Motion.

**I.   Facts**

Plaintiffs attempted to purchase a vehicle from Defendant. On December 28, 2005, the parties agreed on a price, agreed to other terms (including Defendant's attempt to obtain financing for Plaintiffs for the purchase), and the Plaintiffs departed the dealership with the car. The parties signed a document titled "Car Buyer's Offer and Purchase Option Contract." Some of the terms of the contract were:

    1.    Purchase of a 2002 Dodge Intrepid for $11,994.43, with $1000 cash down.
    2.    Immediate possession of the car by Plaintiffs.
    3.    An arbitration provision (set out below).
    4.    Failing acceptance and approval for financing, rescission of the purchase.
    5.    Plaintiffs' agreement to return the vehicle on demand by the Defendant in the event

of #4.

The arbitration agreement provided that the parties agree to arbitrate "any dispute, controversy or claim" between them "arising out of or relating to any aspect of this vehicle purchase transaction and contract." The scope of the potential claims included "all contract, tort, statutory, regulatory, and deceptive trade practice claims arising from or related to this vehicle purchase transaction, contract, and any other claim which may be brought by Purchaser against Dealer." The financing was not approved. Mrs. Silva went to the dealership on February 1, 2006 with the understanding that she was to sign additional papers. When she arrived, Defendant attempted to repossess the vehicle. An altercation of sorts occurred, although Mrs. Silva eventually drove the vehicle home. The Defendant repossessed it shortly thereafter.

Defendant has moved to require arbitration of this case. The Complaint states the following claims: (1) Violation of the federal Equal Credit Opportunity Act; (2) False Imprisonment; (3) & (4) Violations of the Colorado Consumer Protection Act; (5) Negligence; (6) Defamation/Slander; (7) Outrageous conduct; (8) Fraud; (9) Violation of the Colorado Commercial Code; (10) Intentional infliction of emotional distress; and (11) Negligent infliction of emotional distress. Plaintiffs argue that because financing was not obtained, the contract was void and, thus, there is no enforceable arbitration provision. They do not argue that there was any fraud regarding the inclusion of an arbitration provision in the contract.

**II.     Discussion**

    **A.     Governing Law**

Under the Federal Arbitration Act (FAA), 9 U.S.C. § 3, a district court *must* stay or dismiss judicial proceedings when a written agreement provides that the subject of the litigation must be

submitted to arbitration. "'There is a strong federal policy favoring arbitration for dispute resolution.'" *Coors Brewing Co. v. Molson Breweries,* 51 F.3d 1511, 1514 (10th Cir. 1995) (quoting *Peterson v. Shearson/American Express, Inc.,* 849 F.2d 464, 465 (10th Cir. 1988)). If there is uncertainty as to whether a claim is arbitrable, "[a]ll 'doubts are to be resolved in favor of arbitrability.'" *Id.* (quoting *Oil, Chem., & Atomic Workers Int'l Union, Local 2-124 v. American Oil Co.,* 528 F.2d 252, 254 (10th Cir. 1976)).[1]

On the other hand, arbitration is a contractual matter, and parties may not be required to submit to arbitration claims which they have not contractually agreed to submit. *AT&T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 648 (1986); *Coors Brewing Co.*, 51 F.3d at 1516. Only claims having "a reasonable factual connection to the contract" are arbitrable. *Id.*

In the present case, Plaintiffs do not dispute that their claims fall within the very broad arbitration clause at issue here. Rather, they dispute the existence of a valid arbitration agreement at all, based on its inclusion in what they argue is a contingent contract that, due to the failure of financing approval, is void.

"[A] court may compel arbitration of a particular dispute under [the Act] only when satisfied that the 'making' of the agreement to arbitrate is not at issue." *Spahr v. Secco*, 330 F.3d 1266, 1270 (10th Cir. 2003). Prior to proceeding either on the substantive issues in the case or, instead, to compel arbitration, the Court is required to resolve any issues that go to the making of the agreement for arbitration. *Id.* at 1269.

---

[1]The presumption in favor of arbitration "disappears when the parties dispute the existence of a valid arbitration agreement." *Dumais v. American Golf Corp.,* 299 F.3d 1216, 1220 (10th Cir. 2002).

### B.    Whether the Parties Entered a Valid Agreement to Arbitrate

The "Car Buyer's Offer and Purchase Option Contract" ("the Agreement") signed by Plaintiffs includes the following provision related to Plaintiffs' ability to obtain financing: "On a credit transaction, the Purchaser's offer is not accepted and the transaction is not consummated until (a) accepted in writing by an authorized dealer representative in the space indicated below and (b) accepted and approved for financing by a responsible bank, finance company or lender and (c) Purchaser and Dealer have signed an installment contract." Dock. #5, Exh. A. Plaintiffs contend that all three terms are conditions precedent to a valid contract, and the failure of any of these terms means that no contract exists. Defendant argues that the transaction described above is a separate event from the contract at issue and, therefore, not a condition precedent to finding that a contract exists and thus a valid arbitration clause.

The Court agrees that the purchase transaction is a separate event contemplated in the Agreement. The Agreement refers to the "Purchaser's offer," the "purchase transaction," and the "contract" separately. The plain language of the Agreement differentiates between the transaction and the contract as follows: "this vehicle purchase transaction and contract" and again "this vehicle purchase transaction, contract, and any other claim." *Id.* The contract referenced here is not simply another name for the purchase transaction. In fact, the terms of the purchase transaction are set forth in the Retail Sales Contract. Dock. #5, Exhs. D and E. Rather than financing being a condition precedent to the existence of any contract, the Court believes that this case is more akin to the purchase of a home in which the parties enter a valid contract to later complete a purchase transaction, subject to certain conditions. *E.g.*, *Albright v. McDermond*, 14 P.3d 318 (Colo. 2000). Plaintiffs' offer to purchase and the accompanying transaction were never completed. Nevertheless,

4

the parties separately entered a contract to govern, among other things, the possibility that Plaintiffs would not receive financing, as evidenced by the Bailment Agreement requiring Plaintiffs to return the car on demand if financing was not approved. From the face of this Agreement, it is clear that the parties entered a contract to govern their dealings with each other as related to "this vehicle purchase transaction, contract, and any other claim." Dock. #5, Exh. A. As such, a valid contract exists between Plaintiffs and Defendant. *See Ex parte Bill Heard Chevrolet, Inc.*, 927 So. 2d 792 (Ala. 2005).

Because a valid contract exists between Plaintiffs and Defendant, which contains an arbitration clause, Plaintiffs can only avoid arbitration if the arbitration clause does not cover this dispute. This dispute relates to "purchase transaction" and "contract" and "other claims," and is, therefore, covered by the arbitration agreement. The Court will not interfere with that binding agreement.

To the extent that Plaintiffs are concerned that forcing them to go to arbitration will result in an unfair process, the Court is compelled to point out several things. First, Plaintiffs are entitled to a fundamentally fair hearing, a requirement which the federal courts will enforce if appropriate. *Bowles Fin. Group, Inc. v. Stifel, Nicolaus & Co.*, 22 F.3d 1010, 1012-13 (10th Cir. 1994). Further, the courts have found nothing inherently unfair about arbitration clauses, which are uniformly held to be valid and enforceable. *E.g., Adams v. Merrill Lynch, Pierce, Fenner & Smith*, 888 F.2d 696, 700 (10th Cir. 1989).[2]

---

[2]The Court believes it is appropriate to point out to Defendant that its citation to *Monument Builders of Greater Kansas City, Inc. v. American Cemetery Ass'n*, 891 F.2d 1473 (10th Cir. 1989) is quite inaccurate. The case does not stand for the proposition stated, and the alleged quote from the case is actually from *Rogers v. Dell Computer Corp.*, 138 P.3d 826, 829-30 (Okla. 2005).

### C.     The Appropriate Remedy

When the parties have entered into an arbitration agreement, and either party requests a stay of the case pending arbitration, the Court must stay the case. 9 U.S.C. § 3. Here, Defendant has requested a stay, a request that will be granted pending the outcome of the arbitration.

### III.    Conclusion

For the reasons stated above, Defendant's Motion for a Stay and to Compel Arbitration, and in the alternative, a Motion to Dismiss Plaintiff Diane Silva's Claims [Filed June 20, 2006; Docket #5] is **granted** as specified. Plaintiffs must their claims to arbitration, and this case is hereby **stayed** pending the outcome of arbitration.

Dated at Denver, Colorado this 26th day of October, 2006.

BY THE COURT:

 s/ Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge